**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* FRANK TRA,<br><br>Plaintiff,<br><br>v.<br><br>DR. MARK R. FESEN and<br>HUTCHINSON CLINIC, P.A.,<br><br>Defendants. | ) | Case No. 14-2249-JWB-KGG |

**DEFENDANT MARK R. FESEN, M.D.'S**
**MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**

In compliance with D. Kan. Rules 7.1 and 7.6, Defendant Mark R. Fesen, M.D., through counsel, respectfully submits this Memorandum in Support of his Motion to Dismiss pursuant to Fed. Rs. Civ. P. 9(b) and 12(b)(6). Defendant Fesen respectfully requests that this motion be granted and that he be dismissed from this action, stating the following in support.

**NATURE OF CASE AND MATTER BEFORE THE COURT**

The Government has intervened in this *qui tam* action alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq., as well as common law theories against Defendants Mark R. Fesen, M.D. and the Hutchinson Clinic, P.A. The Complaint-in-Intervention ("Complaint") asserts five Counts against the Defendants as follows.[1]

I. False Claims Act (False Claim), 31 U.S.C. § 3729(a)(1)(A)
II. False Claims Act (False Records), 31 U.S.C. § 3729(a)(1)(B)
III. False Claims Act (Reverse False Claim), 31 U.S.C. § 3729(a)(1)(G), *against Defendant Hutchinson Clinic, P.A.*
IV. Unjust Enrichment
V. Payment By Mistake

[1] Unless otherwise noted, the Counts are asserted against Defendants collectively.

The above claims emanate from Dr. Fesen's use of the chemotherapy drug Rituxan, from June, 2008, to October, 2010. The Government alleges that use of Rituxan for maintenance purposes and/or for longer than two years constitutes unnecessary medical treatment merely because such uses are allegedly not in-line with medical compendia guidelines. Here, despite not alleging that any of Dr. Fesen's claims ever misrepresented the type of treatment that was provided, or that Medicare was unaware of Dr. Fesen's use of Rituxan allegedly not being in-line with medical compendia guidelines, the Government nevertheless contends that FCA liability should attach because the claims submitted for reimbursement certified that treatments rendered were medically "reasonable and necessary" as defined under 42 U.S.C. § 1395y(a)(1)(A).

In this Motion, Dr. Fesen respectfully moves for dismissal of all claims against him pursuant to Fed. Rs. Civ. P. 9(b) and 12(b)(6). As shown below, the Government's FCA claims fail because the Complaint does not plausibly allege that Dr. Fesen presented a materially false claim to the Government for payment, and do not adequately identify a single false record that was knowingly made to support a false claim.

Herein, Dr. Fesen also joins the co-Defendant's contemporaneously filed Motion to Dismiss Counts IV and V for failure to state a claim for relief.

## STATEMENT OF UNCONTROVERTED FACTS

For the purpose of resolving this Motion, Dr. Fesen sets forth the following allegations taken from the Complaint, in compliance with the ruling standards for motions to dismiss. Dr. Fesen does not admit the truth or veracity of the allegations set forth herein.[2]

1. Dr. Fesen is a licensed medical oncologist, residing and practicing in the state of Kansas. (Doc. 25, ¶ 9).
2. Dr. Fesen was formerly employed by, and practiced oncology at Defendant Hutchinson Clinic, P.A. during times relevant hereto. (Doc. 25, ¶ 67).
3. At all relevant times, Dr. Fesen was enrolled as a Medicare provider. (Doc. 25, ¶ 68).
4. Defendant Hutchinson Clinic, P.A. is a for-profit professional corporation registered in the state of Kansas. (Doc. 25, ¶ 11).
5. In its Complaint, The Government alleges that Dr. Fesen caused or contributed to the submission of express false certifications by means of a CMS Form 1500, in which providers must certify that "the services on this form were medically necessary." (Doc. 25, ¶ 47).
6. Specifically, the Government alleges that identified claims for Rituxan, and the associated charges for its infusion, were "medically unnecessary." (Doc. 25, ¶¶ 173, 180, 187, 192, 196, 201, 206, 214, 222).
7. For the specified claims, the Government alleges that Rituxan was not medically necessary because:

[2] Counsel for Dr. Fesen is aware that, contemporaneous with this motion, the Hutchinson Clinic, P.A. moves for dismissal of claims premised on *respondeat superior* and vicarious liability, arguing that the allegations contained in the Complaint, if true, demonstrate that Dr. Fesen was working outside the course and scope of his employment. Dr. Fesen clarifies for the Court that, should this issue be converted into one for summary judgment, he intends to dispute this contention.

a. it was not appropriate for treatment of Stage 1 or 1A low grade lymphoma (Doc. 25, ¶¶ 170, 186, 198); or

b. that its use in a maintenance regimen beyond two years had not yet been supported by medical compendia. (Doc. 25, ¶¶ 120, 178, 186, 196, 205, 209).

8. The Government does not allege that Medicare or WPS requested or required information as to staging of the underlying lymphoma diagnosis prior to making a coverage decision regarding a reimbursement claim for Rituxan. (Doc. 25, generally).

9. The Government does not allege that Medicare or WPS requested or required information as to the duration of a maintenance regimen of Rituxan prior to making a coverage decision on a reimbursement claim for Rituxan. (Doc. 25, generally).

10. Medicare only covers services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." (Doc. 25, ¶ 39) (*quoting* 42 U.S.C. § 1395y(a)(1)(A)).

11. Medicare also provides coverage for drugs and biologicals. (Doc. 25, ¶ 41); 42 U.S.C. § 1395u(o)(1).

12. Rituxan is an appropriate "first line treatment" for many types of lymphomas. (Doc. 25, ¶ 120).

13. Rituxan is also medically appropriate and necessary for use in a maintenance regimen, i.e. to prevent or delay certain types of cancer from returning. (Doc. 25, ¶ 120).

14. The exemplar patients identified were all diagnosed with lymphoma at some point in time prior to the Rituxan treatments at issue. (Doc. 25, ¶¶ 120, 169, 175, 183, 189, 194, 198, 204, 208, 216).

15. Dr. Fesen and Hutchinson Clinic submitted the claims for Rituxan to Medicare, through its Medicare Administrative Contractor ("MAC"), Wisconsin Physician Services Insurance Corporation ("WPS"), over a number of years. (Doc. 25, ¶¶ 117, 122, 157, 176-78, 184-86).

16. The Government does not allege that Medicare or WPS denied any of the identified claims that were submitted for Rituxan or its infusion. (Doc. 25, generally).

17. The Government does not allege that WPS was unaware that the use of Rituxan was alleged inconsistency with the medical compendia, nor is it alleged that WPS at any time sought or requested either

    a. additional information on the claims submitted, or

    b. a refund on any payments made. (*Id*.).

18. The Government has not alleged that Dr. Fesen misrepresented the type of Rituxan treatment that was provided. (*Id*.).

19. The Government has not alleged that Dr. Fesen misrepresented the conditions for which he believed Rituxan was medically indicated. (*Id*.).

20. The Government has not alleged that the items or services billed were not delivered or administered as described. (*Id*.).

21. The Government does not allege that Dr. Fesen, in any way, lied on a claim submitted about the actual treatments that he prescribed. (*Id*.).

22. The Government does not allege that Dr. Fesen falsified the indications for the treatments of Rituxan on any claim forms. (*Id*.).

23. The Government affirmatively asserts that the allegedly medically unnecessary treatments at issue were the result of "incorrectly diagnosing patients." (Doc. 25, ¶ 243).

## ISSUES PRESENTED

**I. Whether Counts I and II should be dismissed for failure to plausibly allege the claims submitted to the Government were materially false?**

**II. Whether Count II should be dismissed for failure to plausibly allege:**
**a. Specific false statements or records used in relation to the claims submitted as required by Fed. R. Civ. P. 9(b); or**
**b. That a record or statement was knowingly false?**

**III. Whether Counts IV and V should be dismissed where the claims are based on quasi-contract theories when the Complaint-In-Intervention establishes that a valid contract existed between the parties?**

## MOTION TO DISMISS STANDARD

A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The requirement of plausibility "serves not only to weed out claims that do not have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). While a complaint need not contain detailed factual allegations, it must contain more than labels and conclusions. *Twombly*, 550 U.S. at 553. A formulaic recitation of the elements of a cause of action fails to meet this standard. *Id.* The pleading attacked must also contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action. *Id.* In determining whether adequate facts exist, the court is not bound to accept legal conclusions stated as factual allegations. *Id.*

Because the Government has alleged fraud in this case, heightened pleading standards apply. *See United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018). Federal Rule of Civil Procedure 9(b) mandates that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In order to satisfy this requirement, the complaint must "set forth the time, place and contents of the false representation,

the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted). This rule requires "at a minimum" that plaintiffs support their fraud allegations "with all of the essential factual background that would accompany the first paragraph of any newspaper story-that is, the who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation omitted).

## ARGUMENT AND AUTHORITIES

The Government does not plausibly plead an FCA or common law claim against Dr. Fesen. Counts I and II fail because they do not plausibly allege that Dr. Fesen presented a materially false claim to the Government for payment. Count II also fails to adequately identify a single false record that was made to support a false claim knowingly presented to the Government. Additionally, Dr. Fesen joins the co-Defendant's contemporaneously-filed Motion to Dismiss Counts IV and V for failure to state a claim for relief. These issues are addressed below in turn.

### I. The Complaint does not plausibly allege that any claim presented to the Government was *materially* false.

In relevant part, the FCA provides liability for any person who: "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" 31 U.S.C. § 3729(a)(1)(A)-(B). To act "knowingly" under the FCA, one must have "actual knowledge" of the falsity of information, or act in "deliberate ignorance" or "reckless disregard" of the truth or falsity of information. *Id.* at § 3729(b)(1)(A).

The Tenth Circuit has explained that liability under the FCA may arise from a request for payment that is legally or factually false. *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 741 (10th Cir. 2018) (*citing United States ex rel. Lemmon v. Envirocare of Utah, Inc.*,

614 F.3d 1163, 1168 (10th Cir. 2010)). "Factually false claims generally require a showing that the payee has submitted an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *Id*. (*quoting United States ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1168 (10th Cir. 2016)). "Claims arising from legally false requests, on the other hand, generally require knowingly false certification of compliance with a regulation or contractual provision as a condition of payment." *Id*. (citation omitted).

In this case, the Government presents claims based on a theory of legal falsity, as the Complaint does not allege that Dr. Fesen in any way lied on a claim about the actual treatments that he provided. *See* (Doc. 25, generally). Importantly, the Government has not alleged (and could not allege) that Dr. Fesen ever misrepresented the type of Rituxan treatment that was provided, the conditions for which he believed it was medically indicated, or that the items billed were not administered as described. (*Id*.). Instead, the Government merely challenges the propriety of the cancer treatments prescribed on the ground that they were overly aggressive.

More precisely, the Government advances claims against Dr. Fesen based on an express false certification theory. This occurs "when a government payee falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment." *Polukoff*, 895 F.3d 741 (citation omitted). Specifically, it is asserted that Dr. Fesen caused or contributed to the submission of express false certifications by means of a CMS Form 1500, in which providers must certify that "the services on this form were medically necessary." (Doc. 25, ¶ 47).[3]

[3] It is true that, as alleged in the Complaint, Medicare only covers services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." (Doc. 25, ¶ 39) (*quoting* 42 U.S.C. § 1395y(a)(1)(A)). Medicare also provides coverage for drugs and biologicals. (Doc. 25, ¶ 41);

However, "[l]iability under the FCA does not arise merely because a false statement is included within a claim; rather, the false statement must be material to the government's decision to pay out moneys to the claimant." *Thomas*, 820 F.3d at 1169 (quoting *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1219, n.6 (10th Cir. 2008)). "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Thus, a "false certification... is actionable under the FCA only if it leads the government to make a payment which, absent the falsity, it may not have made." *Lemmon*, 614 F.3d at 1169. This materiality requirement is "rigorous" and not too fact intensive "for courts to dismiss False Claims Act cases" pursuant to Fed. R. Civ. P. 12(b)(6). *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002, n.6 (2016).

The Complaint at hand alleges in conclusory manner that the specified prescriptions for Rituxan and the associated infusions were "medically unnecessary." (Doc. 25, ¶¶ 173, 180, 187, 192, 196, 201, 206, 214, 222). More often than not, the Government simply asserts this without any explanation as to why it believes Rituxan was inappropriate for the clinical indication at issue. *See e.g.* (*Id.*, ¶¶ 189-192). In relying on such conclusory allegations of medical necessity, the Government fails to state a claim for relief. *See United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 779-80 (7th Cir. 2016) (affirming dismissal where the complaint challenged medical necessity of a certain Medicare billing code without "medical, technical, or scientific context which would enable a reader of the complaint to understand why [the provider's] alleged actions amount to unnecessary care forbidden by the statue.").

---

42 U.S.C. § 1395u(o)(1). The term "drugs" is defined to include "any drugs or biologicals used in an anticancer chemotherapeutic regimen for a medically accepted indication." 42 U.S.C. § 1395x(t)(2)(A).

It must be emphasized that the Government expressly concedes that Rituxan is an appropriate "first line treatment" for many types of lymphomas. (Doc. 25, ¶ 120). The Government also avers that Rituxan is medically appropriate and necessary for use in a maintenance regimen, i.e. to prevent or delay a cancer's return. (*Id.*).

Despite the length of the Complaint, there are but two bases articulated to explain why the Government believes that Rituxan was not medically necessary: (1) that it was not appropriate for treatment of Stage 1 or 1A low grade lymphoma (Doc 25, ¶¶ 170, 186, 198); and (2) that its use in a maintenance regimen beyond two years had not yet been supported by medical compendia. (Doc. 25, ¶¶ 120, 178, 186, 196, 205, 209). However, these allegations do not plausibly demonstrate that the reimbursement claims for Rituxen were *materially* false.

First, it is implausible to conclude based on the Complaint itself that the cancer staging information was a material element of the claim's reimbursement. This same argument was expressly rejected in the case of *United States ex rel. Hess v. Sanofi-Synthelabo Inc.*, No. 4:05CV570MLM, 2006 U.S. Dist. LEXIS 22449, at *23-24 (E.D. Mo. Apr. 21, 2006). In *Hess*, the plaintiff alleged that the defendant pharmaceutical company fraudulently promoted to doctors certain off-label uses of Eloxatin, a chemotherapy drug that was approved by the FDA for second line treatment of Stage IV colorectal cancers. *Id*. at *5-6. Plaintiff also alleged that defendant provided training on how to get Medicare to reimburse such off-label uses of the drug, and that its efforts caused individual physicians to submit Medicare claims for off-label use of Eloxatin; namely, for first line treatment of early stages of colorectal cancer. *Id*. In granting defendant's motion to dismiss under the pre-*Twombly* standard, the court reasoned that the CMS Form 1500 "does not require a doctor to indicate what stage cancer the patient has. As such, the stage of a patient's cancer is not material to a doctor's seeking reimbursement for his or her prescribing

Eloxatin for treatment of cancer." *Id*. at 24. Similarly, "The stage of a patient's cancer, therefore, was not material to WPS in making a decision to reimburse doctors for their prescription of Eloxatin." *Id*. Because of this, the court held that plaintiff insufficiently plead the materiality requirement of the FCA and "under no circumstances [could] Plaintiff prove facts to support his claim that Defendant violated the FCA." *Id*. at *24.

*Hess* is remarkably similar to the case at hand, wherein the Government has failed to sufficiently allege that the stage of lymphoma or the length of the treatment regimen are material conditions upon which WPS based its Rituxan reimbursement decisions. Specifically, the Government does not allege that the claim reimbursement form requires physicians to specify the stage of lymphoma for which they prescribe Rituxan. It also does not allege that a claim form requires information regarding the duration of a maintenance regimen of Rituxan. Accordingly, CMS has determined this information is not material to its contractor's reimbursement decisions. If this were not the case, CMS could clearly change its own form and require whatever additional information it deemed material. Likewise, contractors such as WPS are instructed to pend claims and "request additional information" when it "cannot make a determination of medical necessity based upon the information on the claim and its attachments." *See* Medicare Program Integrity Manual, dated Nov. 22, 2000, Chapter 3 at § 5.3.3, *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R3PIM.pdf. Here, the Government has not alleged that WPS ever required or sought additional information as to cancer staging or the duration of maintenance regimens for the uses of Rituxan at issue. On the contrary, the facts alleged demonstrate that WPS determined that the information provided was sufficient for it to decide that the use of Rituxan was medically necessary because it paid the claims at issue.

Fundamentally, the Government's allegations are an attempt to challenge CMS' determination of medical necessity based on two tangential pieces of information that CMS, and its contractor WPS, determined were immaterial when it decided to pay the claims almost a decade ago. This does not plausibly state a claim for relief under Fed. Rs. Civ. P. 9(b) and 12(b)(6). *See Lemmon*, 614 F.3d at 1169 ("[A] false certification . . . is actionable under the FCA only if it leads the government to make a payment which, absent the falsity, it may not have made."); *Conner*, 543 F.3d at 1219-20 ("If the government would have paid the claim despite knowing that the contractor has failed to comply with certain regulations, then there is no false claim for purposes of the FCA."); *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 663 (5th Cir. 2017) ("[C]ontinued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in establishing materiality.").

The criticism of the duration of the Rituxan maintenance therapy warrants heightened skepticism because WPS had actual knowledge of the duration that Rituxan was used. Indeed, the Complaint makes clear that Dr. Fesen's continuation of the Rituxan in maintenance regimens was open and obvious because he and Hutchinson Clinic submitted the claims for continued maintenance therapy to WPS over a number of years. (Doc. 25, ¶¶ 117, 122, 157, 176-78 & 184-86). Despite this open and obvious use of Rituxan, allegedly in conflict with the compendia, the Complaint demonstrates that WPS continued reimbursing the claims. Therefore, WPS's decisions as to medical necessity confirm that compliance of the compendia in all cases was not material.

It should be noted that WPS is not alleged to have been unaware of the Rituxan treatment's alleged inconsistency with the medical compendia, and nor is it alleged that WPS at any time sought or requested a refund on the payments made. (Doc. 25, generally). Because WPS had actual knowledge of this allegedly "false" certification and nevertheless continued to pay the claims at

issue, the Government cannot plausibly show the violation was material to WPS' payment decisions. *See Escobar*, 136 S. Ct. at 2003-04 ("if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material."); *Thomas*, 820 F.3d at 1172 (holding that where the agency was aware of allegations of altered documents but never took any adverse action against the contractor, this demonstrated that the alleged violation was not material to the payment decisions).

It is anticipated that the Government will rely on the Tenth Circuit's decision in *Polukoff* to support its contention that it has sufficiently stated a claim for relief under the FCA. However, *Polukoff* is both factually and legally distinguishable from the case at hand.

Factually, *Polukoff* involved a defendant physician who was alleged to have performed a vast number of medically unnecessary heart surgeries based on "his medically unsupported belief that [the procedures] would cure migraine headaches or prevent strokes." *Id*. at 737. The complaint alleged that there had long been general agreement in the medical community that the procedures at issue were only medically necessary in the very limited instance of a confirmed diagnosis of a recurrent cryptogenic stroke or TIA. *Id*. Nevertheless, and unlike Dr. Fesen, the doctor in *Polukoff* was specifically alleged to have "[known] that Medicare and Medicaid would not pay for [the procedures] to treat migraines, so he chose to represent that the procedures had been performed based upon indications set forth in the AH[A]/ASA stroke guidelines—the existence of confirmed recurrent cryptogenic stroke." *Id.* Furthermore, the relator alleged that he personally "observed [defendant] *create* [the condition his procedures would treat] by puncture of the atrial septum in patients who were found to have an intact septum during surgery." *Id.* at 738 (emphasis in original).

In the present case, the Government has not alleged that Dr. Fesen falsified the indications for the treatments of Rituxan on any claim forms. (Doc. 25, generally). On the contrary, the Complaint affirmatively alleges that the exemplar patients all had a lymphoma diagnosis at some point in time prior to their treatment, and that Rituxan is indicated for the treatment of many types of lymphoma. (Doc. 25, ¶¶ 120, 169, 175, 183, 189, 194, 198, 204, 208, 216). Additionally, any allegation that a biopsy or lab report demonstrated that there was no current evidence of disease[4] is directly undercut by the Government's express concession that Rituxan is medically appropriate and necessary for use in a maintenance regimen, i.e. to prevent or delay a cancer's return. (Doc. 25, ¶ 120). Unlike in *Polukoff*, Dr. Fesen is not alleged to have caused the condition for which Rituxan was prescribed, nor does the Complaint contain any facts specifying a false diagnosis. (Doc. 25, generally).

*Polukoff* is also legally distinguishable, as it did not address the materiality requirement of the FCA. 895 F.3d at 745. This is understandable, as the allegation that the defendant punctured his own patients' hearts to create indication for his surgeries cannot be said to be immaterial. Instead, *Polukoff* reversed the district court's dismissal of the case based in part on the FCA's scienter requirements, which it held may be "alleged generally." *Id*. In short, because it was alleged that the defendant in *Polukoff* intentionally falsified the indications for the procedures at issue (and even caused the conditions), materiality was simply not at issue.

In summary, the Complaint's attempt to challenge CMS's determination of medical necessity amounts to playing Monday morning quarterback for a decade-old game. As articulated, the two aspects on which medical necessity is challenged include the stage of the underlying cancer and the length of the maintenance therapy. CMS, and its contractor WPS, determined that the stage

[4] *See e.g.* (Doc. 25, ¶ 171).

of the lymphoma was not material to its decision to pay the claims at issue as evidenced by the fact that it did not request this information before it paid the claims. Likewise, despite the fact that the duration of the maintenance therapy was open, obvious, and known to WPS, it made the determination that these treatments were indeed medically necessary and continued to reimburse the claims submitted. Because WPS is the entity charged with deciding medical necessity, the Government's allegations have failed to plausibly allege that any claims submitted were *materially* false. Accordingly, dismissal with prejudice under Fed. Rs. Civ. P. 9(b) and 12(b)(6) is warranted.

## II. Count II also fails to meet Fed. R. Civ. P 9(b) requirements for specifying the submitted claim was *knowingly* and *materially* false.

As discussed above, the Government's FCA claims contain insurmountable legal deficiencies as to the materiality element. This also pervades the claim for utilizing false records or statements under 31 U.S.C. 3829(a)(1)(B), because the false records and statements at issue are based on the same claim that the Rituxan treatments were medically unnecessary. *See* (Doc. 25, at 42).

In addition, Count II also fails to identify any specific false statement or record that Dr. Fesen allegedly made in relation to any of the claims identified. *See* (Doc. 25, ¶¶ 173, 180, 187, 192, 196, 201, 206, 214, 222, 223). This absolutely fails to satisfy Fed. R. Civ. P. 9(b)'s requirements to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch*, 203 F.3d at 1236. Count II should be dismissed accordingly. *See, e.g.*, *United States ex rel. Benaissa v. Trinity Health*, No. 15-159, 2018 WL 6843624, at *12-13 (D.N.D. Dec. 31, 2018) (dismissing the § 3729(a)(1)(B) theory because it did "not plead the making of any 'false record or statement' with particularity").

Furthermore, as previously discussed, the Government does not allege that Dr. Fesen *falsified* his patients' diagnoses. Instead, Count II of the Complaint affirmatively asserts that the allegedly medically unnecessary treatments at issue were the result of simply "incorrectly diagnosing patients." (Doc. 25, ¶ 243). Although the allegation of mistaken diagnoses is adamantly disputed by Dr. Fesen, it is undisputed that mistake does not amount to fraud. Accordingly, this allegation fails to allege any facts to satisfy the requirement that the false statements or records be "knowingly" utilized, as required and defined by 31 U.S.C. §§ 3729(a)(1)(B), 3729(b)(1)(A). As such, Count II should also be dismissed for failing to adequately allege that Dr. Fesen *knowingly* made or used a false record or statement material to a false claim.

## III. Counts IV and V should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

For the reasons articulated in the Motion and Memorandum filed by Co-Defendant Hutchinson Clinic, and in an effort to reduce duplicative briefing, Dr. Fesen hereby joins the Motion to Dismiss Counts IV and V and incorporates by reference the issues and arguments regarding the Government's failure to plausibly plead any quasi-contract claim raised therein. For the reasons incorporated herein, the Court should dismiss Counts IV and V against Dr. Fesen pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

There is often disagreement between medical professionals as to the appropriate course and scope of treatments for their patients. However, the FCA is not the appropriate mechanism for resolving all such disputes. While this is not to say that a physician cannot be liable under the FCA, in this case the Government has not alleged that Dr. Fesen ever misrepresented the type of Rituxan treatment that was provided or the condition for which he believed it was medically indicated. Furthermore, the Government challenges the medical necessity determination based only on

information that CMS itself either knew or did not request when it decided to approve the claims at issue. Because the entity tasked with the determination of medical necessity determined that such information was immaterial when it paid the claims almost a decade ago, the Government has failed to plausibly allege any claim presented to the Government was *materially* false.

For the foregoing reasons, Dr. Fesen respectfully requests the Court dismiss Counts I, II, IV, and V pursuant to Fed. Rs. Civ. P. 9(b) and 12(b)(6).

RESPECTFULLY SUBMITTED BY:

**SIMPSON, LOGBACK, LYNCH, NORRIS, P.A.**

By: */s/ John Wesley Smith*
Mark A. Lynch, KS Bar #14277
John Wesley Smith, KS Bar #24935
7400 West 110th Street, Suite 600
Overland Park, Kansas 66210
Telephone: (913) 342-2500
Facsimile: (913) 342-0603
mlynch@slln.com
wsmith@slln.com
ATTORNEYS FOR DEFENDANT
MARK R. FESEN, M.D.

**CERTIFICATE OF SERVICE**

I certify that on the 7th day of March, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send email notification of electronic filing to counsel for all parties of record.

*/s/ John Wesley Smith*
Attorney