**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* FRANK TRA,<br><br>Plaintiff,<br><br>v.<br><br>DR. MARK R. FESEN and HUTCHINSON CLINIC, P.A.,<br><br>Defendants. | ) | Case No. 14-2249-JWB-KGG |

**DEFENDANT MARK R. FESEN, M.D.'S**
**REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

In compliance with D. Kan. Rule 7.1(c), Defendant Mark R. Fesen, M.D., ("Dr. Fesen") through counsel, respectfully submits this following Reply in Support of his Motion to Dismiss pursuant to Fed. Rs. Civ. P. 9(b) and 12(b)(6).

## ARGUMENT AND AUTHORITIES

In his Motion to Dismiss, Dr. Fesen respectfully moves for dismissal of all claims against him because the Government's Complaint-in-Intervention ("Complaint") fails to plausibly allege that Dr. Fesen presented a *materially* false claim, and did not adequately identify a single false record that was knowingly made to support a false claim. In its Response, the Government generally argues that Dr. Fesen's alleged use of Rituxan in maintenance regimens lasting longer than two years or for treatment of Stage 1 or 1A low-grade lymphoma were indeed material to the determination of medical necessity. Medicare's awareness of the open and obvious length of treatment when it decided to pay the claims at issue a decade ago, and the fact that it did not require or request any information regarding a cancer's staging before making its determination of medical necessity, contradict the Government's position.

## I. The Government fails to plead facts to plausibly demonstrate materiality as required under the FCA.

In its Consolidated Response to Defendants' Motions to Dismiss, the Government acknowledges that Medicare had knowledge of, and yet continued to pay claims for Rituxan in maintenance regimens beyond two years. (Doc. 51, at 14). Nevertheless, it argues that this "in no way negates materiality" because continued payments are simply one of many factors a court should consider in determining materiality. (Doc. 51, at 13-15). Admittedly, "courts are to conduct a holistic approach to determining materiality in connection with a payment decision, with no one factor being necessarily dispositive." *United States ex rel. Escobar v. Universal Health Servs.*, 842 F.3d 103, 109 (1st Cir. 2016). However, the Government inappropriately ignores the weight given to the continued payments, especially given that the totality of the Complaint fails to plausibly plead the element of materiality under the FCA.

"The materiality standard is demanding." *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016). "*Escobar* rejects a system of government traps, zaps, and zingers that permits the government to retain the benefit of a substantially conforming good or service but to recover the price entirely — multiplied by three — because of some immaterial contractual or regulatory non-compliance." *United States ex rel. Ruckh v. Salus Rehab., LLC*, 304 F. Supp. 3d 1258, 1263 (M.D. Fla. 2018) "Significantly, since *Escobar*, circuit courts have uniformly recognized that 'continued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in establishing materiality.'" *United States ex rel. Bachert v. Triple Canopy, Inc.*, 321 F. Supp. 3d 613, 620 (E.D. Va. 2018) (*quoting United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 663 (5th Cir. 2017)). Continued payments with knowledge are precisely the allegations presented in this case with regard to the use of Rituxan in maintenance regimens beyond two years:

i. Medicare, through its contractor WPS, had continuous access to the claims submitted by Hutchinson Clinic for the services of Dr. Fesen. (Doc. 25, ¶ 31);

ii. Medicare reviewed and continued to pay claims for Rituxan beyond two years, despite the fact that such treatments did not allegedly comply with compendia requirements; (*Id.*, ¶¶ 178, 196); and

iii. Medicare never sought or requested a refund for any payments relating to these maintenance regimens. (*Id.*, generally).

*Escobar* held that, "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, **that is very strong evidence** that those requirements are not material." 136 S.1978, 1995 (emphasis added). While the Government is correct in asserting that this is one piece of the puzzle, the weight of this factor is overwhelming in the present case.

Furthermore, this is not the only factor weighing against materiality. For example, the Government has not alleged that Medicare or WPS even requested that the length of maintenance regimens be included on claim forms. This also strongly weighs against materiality, as the government body charged with making the determination of medical necessity did not believe this information relevant enough to require or even request it. *See United States ex rel. Hess v. Sanofi-Synthelabo Inc.*, No. 4:05CV570MLM, 2006 U.S. Dist. LEXIS 22449, at *23-24 (E.D. Mo. Apr. 21, 2006).

One is left with the question as to what facts the Government actually alleged to attempt to overcome this strong evidence against materiality. In its Response, the Government points only to its allegations that maintenance regimens beyond two years allegedly "violated both industry guidelines and hospital guidelines…[and that] other physicians objected to Fesen's practice." (Doc. 51, at 10). These conclusory allegations do not demonstrate that the length of maintenance

regimen was material to the payment decision, where it is not alleged that the Local Coverage Determination at issue precluded the same. *See* (Doc. 24, ¶¶ 120) (alleging only a lack of studies showing efficacy of maintenance Rituxan beyond two years, not that the LCD *proscribed* such aggressive use in preventing subsequent recurrence of B-cell non-Hodgkin's lymphoma). Similarly, simply a disagreement between physicians as to the best methodology and treatments in a field as intricately complex as hematologic oncology cannot be sufficient to plausibly allege material falsity. *See U.S. v. Regents of Univ. of California*, 912 F. Supp. 868, 886 (D. Md. 1995) ("Disagreements over scientific methodology do not give rise to False Claims Act liability.") (*citing* United States ex rel. Anderson v. Northern Telecom, Inc., 52 F.3d 810, 815-16 (9th Cir. 1995)

In this case, the Government does not dispute that its own Complaint presents strong evidence against materiality. While the Government is correct that other factors can play into the analysis, it has failed to plead facts to plausibly show that the length of a maintenance regimen was material to determining medical necessity. The Government fails to plausibly state a claim for relief were its own Complaint, considered in its totality, presents "very strong evidence" against materiality.

This is similarly the case with regard to the Government's reference to cancer staging, as the Complaint alleges no facts to plausibly demonstrate that this information was a material element of a claim's reimbursement. Again, it is not alleged that WPS ever required or sought information as to a specific stage of a cancer in making coverage determinations for the use of Rituxan. "The stage of a patient's cancer, therefore, was not material to WPS in making a decision to reimburse doctors for their prescription of [chemotherapy]." *See Hess,* No. 4:05CV570MLM, 2006 U.S. Dist. LEXIS 22449, at *23-24 (E.D. Mo. Apr. 21, 2006).

Although the Government attempts to downplay the holding from *Hess*, it fails to draw any meaningful distinctions. Specifically, the Government argues that the defendant in *Hess* was "open…regarding its intentions to market Eloxitan for various settings" because it submitted multiple applications for FDA approval of the same. (Doc. 51, at 16). While true, this is beside the point, because the court specifically held that the plaintiff insufficiently plead the materiality requirement of the FCA because Medicare does not require a physician to specify the stage of cancer in submitting claims for reimbursement. *Hess* No. 4:05CV570MLM, 2006 U.S. Dist. LEXIS 22449, at *23-24. More relevant is the fact that *Hess* was decided before the adoption of the *Iqbal/Twombly* standards on motions to dismiss. If the plaintiff in *Hess* could prove no facts to demonstrate the materiality of cancer staging when the same information is not requested by Medicare, the Government certainly has not presented a plausible claim based on the same allegations.

Additionally, the Government cites a lab report from Patient A, also quoted in the Complaint, which it asserts found "no evidence of lymphoma." (Doc. 51, at 16). It must be noted that the Government does not allege that any of the exemplar patients did not have cancer. *See* (Doc. 25, ¶¶ 169-216) (describing all patients as having received or listed diagnosis of types of lymphoma). On the contrary, the Government asserts that Patient A was indeed seen by Dr. Fesen "for a diagnosis of stage 1 lymphoma." (Doc. 25, ¶ 169). Therefore, a single lab or pathology report, *without context as to whether it refers only to metastatic spread of the disease in certain areas of the body*, does not plausibly support an inference that the stage of the cancer or length of the Rituxan treatment was material to Medicare's reimbursement decision. This is particularly so, in light of the Government's express allegation that Rituxan is medically appropriate and necessary for use in a maintenance regimen, i.e. to prevent or delay a cancer's return. (Doc. 25, ¶ 120). The

Government's own allegations make clear that Rituxan can be medically necessary even after the prior evidence of disease has been removed.

Finally, the government argues that materiality is an "evidentiary inquiry not appropriate on a motion to dismiss…[and] [a]bsent an opportunity for discovery, it is not reasonable to expect or require detailed allegations concerning the United States' actual knowledge…" (Doc. 51, at 17). The Supreme Court expressly rejected the argument that materiality is too fact intensive for courts to dismiss FCA cases on a motion to dismiss. *Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016) (noting Fed. Rs. Civ. P. 8 and 9(b) require "**pleading facts to support allegations of materiality**.") (*emphasis added*). Here, there are no facts plead to plausibly indicate that either the cancer staging or length of treatment were material to Medicare's decision to pay the Rituxan claims at issue nearly ten years ago. Accordingly, dismissal with prejudice under Fed. Rs. Civ. P. 9(b) and 12(b)(6) is warranted.

**II. Count II also fails to meet Fed. R. Civ. P 9(b)'s requirements for specifying what false records were knowingly made.**

In its response, the Government presents only the conclusory argument that the "Complaint alleges that Fesen's records are false and were used to justify claims for the administration of Rituxan when it was not medically indicated as the clinic billed for services provided by Fesen." (Doc. 51 at 20). However, no individual false records created by Dr. Fesen are specifically described or cited in the Complaint or Response. *See* (Doc. 25, generally). Rather, the Government only cites two quotations from another provider, Dr. Gingrich, disagreeing with diagnoses/treatments presumably made or undertaken by Dr. Fesen in unspecified records. This utterly fails to identify the false records or statements at issue, let alone plausibly alleges that the unspecified "false records" were utilized to support payment of a false claim. *See Shaw v. AAA*

*Eng'g & Drafting, Inc.*, 213 F.3d 519, 531 (10th Cir. 2000) ("Under § 3729(a)(2), liability is premised on the presentation of a false record or statement to get a false or fraudulent claim paid or approved."). Similarly, the Government's allegations regarding negative pathology or lab reports do not identify, consistent with Fed. R. Civ. P. 9(b), the specific false records the government claims were created by Dr. Fesen in order to have the allegedly false claims paid. Under Rule 9(b), the Government is required to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000). Generally asserting that "Dr. Fesen's records are false" does not meet this standard.

Indeed, the entirety of the Complaint fails to identify any specific false record allegedly created or used by Dr. Fesen to support an allegedly false claim for Rituxan. *See* (Doc. 25, generally). As noted in his Motion to Dismiss, the Government's claims are based on a theory of legal falsity, as the Complaint does not allege that Dr. Fesen falsified diagnoses, treatments rendered, or the conditions for which he believed Rituxan was medically indicated. *See* (Doc. 25, generally). Instead, the Government merely charges that Dr. Fesen used unspecified "false records or statements material to false or fraudulent claims…by incorrectly diagnosing patients or certifying that treatments were medically necessary when they actually were not." (Doc. 25, ¶¶ 242-243). This bare-bones and formulaic recitation of the elements fails to plausibly allege any specific false statements or records used in relation to the claims submitted as required by Fed. R. Civ. P. 9(b) and that such record or statement was knowingly false. The Government's claim under § 3729(a)(2) should be dismissed accordingly.

**III. Leave to amend should be denied as futile.**

As a fallback, the Government asks for leave to amend should the Court find any of its claims deficient. (Doc. 51, at 29). In this case, justice requires leave be denied because the defects in the Complaint are not merely technical. Neither in the ten years since the claims at issue were submitted, nor the five years since this lawsuit was filed has Medicare demanded refund or repayment. The substantive defects with regard to materiality are inherent to the claims themselves, and a mere shuffling or words or the addition of phrases cannot save the same.

**CONCLUSION**

In this case, the Government challenges not only Defendant's determination of medical necessity but that of Medicare itself. It does so based only on information that Medicare either knew or did not request when it decided to approve the claims at issue almost a decade ago. Because Medicare determined that such information was immaterial when it paid the claims at issue, the Government has failed to plausibly allege any claim presented to the Government was *materially* false. Counts I and II must be dismissed accordingly.

Count II should also be dismissed under Fed. Rs. Civ. P. 9(b) and 12(b)6) for failing to adequately identify a single false statement or record that was knowingly made to support a false claim presented to the Government. The Government's conclusory and general statement that "Dr. Fesen's records are false" is wholly inadequate, and citations to pathology reports not created by Dr. Fesen or statements attributed to Dr. Gingrich offer no clarification.

Finally, Counts IV and V must be dismissed for failure to state a claim for relief for the reasons articulated in the co-Defendant's Motion to Dismiss.

For these reasons, Dr. Fesen respectfully requests the Court dismiss Counts I, II, IV, and V pursuant to Fed. Rs. Civ. P. 9(b) and 12(b)(6).

RESPECTFULLY SUBMITTED BY:

**SIMPSON, LOGBACK, LYNCH, NORRIS, P.A.**

By: */s/ John Wesley Smith*
Mark A. Lynch, KS Bar #14277
John Wesley Smith, KS Bar #24935
7400 West 110th Street, Suite 600
Overland Park, Kansas 66210
Telephone: (913) 342-2500
Facsimile: (913) 342-0603
mlynch@slln.com
wsmith@slln.com
ATTORNEYS FOR DEFENDANT
MARK R. FESEN, M.D.

## CERTIFICATE OF SERVICE

I certify that on the 10th day of June, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send email notification of electronic filing to counsel for all parties of record.

*/s/ John Wesley Smith*
Attorney